13469

SPENCER v. FIRST CAROLINAS JOINT STOCK LAND BANK OF COLUMBIA *ET AL.*

(165 S. E., 731)

*Messrs. P. A. Murray, Jr.* and *Melton & Belser,* for appellants,

*Messrs. D. S. Matteson* and *R. E. Hanna,* for respondent,

August 12, 1932.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

This was an action for damages in the sum of $10,000.00, $600.00 actual and the balance punitive. The defendants are the First Carolinas Joint Stock Land Bank of Columbia and L. S. Gibson. The complaint did not so allege, but the record shows that Gibson, in the matters complained of by the plaintiff, was acting as agent of the "land bank."

The facts, upon which the suit was based, from the viewpoint of the plaintiff, were stated in the complaint as follows: "* * * On, or about October 12, 1930, the plaintiff had stored in gin house, which was in the custody of G. R. Spencer, six (6) bales of seed cotton of the value of Six

Hundred and No/100 Dollars. That the defendants in a wilful, wanton, malicious, unlawful, negligent and careless manner and with an utter disregard of the rights of this plaintiff and with intent to injure this plaintiff did forcibly take into its possession by converting to their own use the said cotton, the property of the plaintiff, and did deprive the plaintiff in the above manner of the said cotton and by reason of their acts, as aforesaid, did allow the said cotton to be burned and destroyed, * * * although due demand has been made on the defendants, defendants have failed and refused to pay this plaintiff."

The substance of the joint answer of the defendants was to this effect: First, a general denial of the material allegations of the complaint. They set up allegations that the ginhouse was on land on which the land bank held a mortgage, and possession of the premises had been delivered to the land bank some months previous to the fire; the land bank acquired title to the land through a deed from the master of Chesterfield County early in October; discovering that G. R. Spencer, the former owner and mortgagor, was operating a ginnery on the premises, without the consent of the owner or the tenant in possession, on November 3, 1930, under a writ of assistance, the sheriff put Gibson, as representative of the land bank, in possession of the premises; the sheriff's deputy found the ginhouse locked; Gibson placed other locks on two of the doors; if cotton was stored there, it was stored without the knowledge or consent of the defendants, and, two nights after the defendants got possession of the ginhouse, it was destroyed by fire without fault on their part.

The trial Judge, Hon. T. S. Sease, refused a motion for nonsuit on the part of the defendants, and a directed verdict in their favor. He held there was no basis for punitive damages. The verdict, and judgment thereon, was in favor of the plaintiff for $495.86. A motion for a new trial was refused, and the defendants by appeal, have come to this Court.

It is our view that the real issues in the appeal for our

determination may be decided without a detailed statement as to the exceptions.

While the presiding Judge instructed the jury both as to the law of conversion and bailment, it is our opinion that the complaint was based alone on the theory of conversion, and that bailment was not involved.

"It is the element of lawful possession, however created, and the duty to account for the thing as the property of another, that creates the bailment, regardless of whether such possession is based on contract in the ordinary sense or not." 3 R. C. L., 83.

See, also, *Fleischman, etc., v. Southern Railway,* 76 S. C., 237, 56 S. E., 974, 9 L. R. A. (N. S.), 519; *Robinson v. Southern Cotton Oil Co.,* 108 S. C., 92, 93 S. E., 395; *Marlow v. Conway Iron Works,* 130 S. C., 256, 125 S. E., 569.

The allegations of plaintiff's complaint are to the effect that the cotton was stored in a ginhouse, which was in the custody of G. R. Spencer, and that the defendants *forcibly* took possession of the cotton and *converted* it to their own use, "in a wilful, wanton, malicious, unlawful, negligent and careless manner and with an utter disregard of the rights of this plaintiff with intent to injure this plaintiff"; and "did *deprive* the plaintiff in the above manner of the said cotton *and by reason of their acts, as aforesaid, did allow* the said cotton to be burned and destroyed." (Italics ours.)

All of those charges are entirely consistent with a cause of action *for conversion,* which is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession, permanently or for an indefinite time." 26 R. C. L., 1098.

The evidence in the case is altogether lacking, it appears to us, to establish either the charge of conversion or any breach of duty under the doctrine of bail-

ment. The testimony shows that the land bank obtained title to the land, on which the ginhouse was located, under a foreclosure sale held on October 6, 1930. In order, however, to obtain possession of the ginhouse, it was necessary for the land bank to get a Court order, which was on October 22, 1930, and, under that order, the land bank, through its agent, Gibson, was placed in possession of the ginhouse on November 3, 1930. In addition to the locks already on the doors of the ginhouse, additional locks were placed, and "no trespass" signs were posted. These steps were taken without any knowledge or notice at the time that plaintiff's cotton was stored in the ginhouse, so far as the record shows. On the same day that the land bank, through its agent, took possession, a special deputy sheriff, acting for the sheriff, who had enforced the order of the Court, went to the home of G. R. Spencer, the former owner and mortgagor, who had been operating the gin, and showed him the Court order. Mr. G. R. Spencer then told the deputy of the cotton being stored in the gin, remarking at the time, "if we get burned up, who is going to pay him (plaintiff) for it?" The deputy (Mr. C. L. Melton) replied, "you can see Mr. Gibson and get it out; I just put him in possession of the property and not of any cotton." The plaintiff lived only a few hundred yards from the ginhouse. The conversation between the deputy and G. R. Spencer was not communicated to Gibson until about noon of the next day. The deputy watched the ginhouse the first night until about 3 o'clock. There was no watch the next night, and during that night the fire broke out, destroying the building and the cotton contained therein. Plaintiff made no demand or claim for the cotton, either to the deputy, to the land bank, or to its agent, until after the fire had occurred. He testified he did not know anything about the gin being closed or taken over by the bank.

The defendants, if responsible at all for the safe-keeping of the cotton, under the law of bailment, were not chargeable with any duty or care until they were notified of the

storage of the cotton at the ginhouse. All that they did was to take possession of the gin, under a Court order, without even knowing that cotton was in the ginhouse. The only responsibility that could attach to the defendants in any event would be that of gratuitous bailees. Under the law, a gratuitous bailee "can be held responsible only for bad faith, or gross negligence. * * * If the property be wrested from him (a gratuitous bailee) by robbery, or taken by theft, or destroyed by fire or violence, without his gross neglect, he is not liable." 3 R. C. L., 99.

A careful examination of all the evidence in this case fails to show anything to warrant the implication of bad faith, or gross negligence, against the defendants, or either of them. Under those circumstances, the circuit Judge should have granted a directed verdict in favor of the defendants.

Let it be expressly understood that nothing we have said is to be taken as an indication of our opinion as to the liability, or non-liability, of G. R. Spencer to the plaintiff in this action. No claim against him is involved here.

The judgment of this Court is that the judgment below be reversed, with instructions that a directed verdict in favor of the defendants be entered up, as provided in Rule 27 of this Court.

Messrs. Justices Stabler and Bonham and Mr. Acting Associate Justice W. C. Cothran concur.

Mr. Justice Carter did not participate.